# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 07 2017, 7:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Phillips
Phillips Law, P.C.
Boonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of R.S. (Minor Child) Child in Need of Services, and D.S. (Mother), *Appellant-Respondent,* v. The Indiana Department of Child Services, *Appellee-Petitioner.* | July 7, 2017 Court of Appeals Case No. 87A05-1609-JC-2280 Appeal from the Warrick Circuit Court The Honorable Greg Granger, Judge Trial Court Cause No. 87C01-1507-JC-126 |

**Bailey, Judge.**

# Case Summary

D.S. ("Mother") and J.S. ("Father") (collectively, "Parents") appeal the denial of their Indiana Trial Rule 60(B)(8) motion for relief from judgment. They present the sole issue of whether the trial court abused its discretion by denying the request for clarification of a Child in Need of Services ("CHINS") order to provide that it did not include a finding of parental neglect. We affirm.

# Facts and Procedural History

On May 5, 2010, Parents adopted R.S., who was then eleven years old. On June 23, 2015, the Indiana Department of Child Services ("DCS") initiated an investigation after receiving a report that R.S. and Mother had been engaged in a physical altercation. It was reported that R.S. was found to be in possession of an R-rated movie in violation of house rules; Mother verbally confronted R.S. and pushed against her cheek; R.S. slapped or hit Mother in the arm more than once; and law enforcement was contacted, leading to DCS intervention. As of the date of the initial intake report, R.S. had been placed by Mother and Father into a private respite care foster home. Family Case Manager Briana Hofman ("Hofman") interviewed Mother, who indicated that she and Father were uncertain as to whether R.S. would be allowed to return home. In her report, Hofman documented her advisement that "if [R.S.] is not allowed back into their home and they have not found suitable placement for [R.S.], this is considered abandonment." (App. Vol. III, pg. 11.)

[3] On June 26, 2015, Mother contacted Hofman to report that R.S. could not remain at the respite care home and Parents were not allowing R.S. to return to their home. Hofman reportedly discussed the possibility of services, but Mother "was not interested." (App. Vol. III, pg. 11.) On June 30, 2015, Hofman met with both Mother and Father. Hofman documented her identification of the following possible services: "crisis intervention, home-based casework, homebuilders, in-home therapy, mentors, parent aids, post-adoptive respite care, and post-adoptive services," but additionally reported that "[Parents] are declining all services at this time" and had "signed a paper confirming that they are not accepting any of the offered services at this time." (App. Vol. III, pg. 13.) On July 2, 2015, Mother again contacted Hofman regarding a need for placement for R.S. Per Hofman's intake report, Mother was again offered services and again declined. DCS took custody of R.S.

[4] On July 7, 2015, DCS filed a request for court authorization of a petition alleging R.S. to be a CHINS. On the same day, Parents made certain evidentiary admissions and the filing of a CHINS petition was authorized. Additional parental admissions were entered on July 15, 2015. Parents obtained counsel and moved for amendment of the CHINS petition. On September 30, 2015, the CHINS court granted the motion for amendment, such that the word "neglect" was struck from Section 5(a) of the petition and the section thereafter provided in relevant part: "the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability or refusal of the child's parent …" (App. Vol. II, pg. 15.) Also, in

Section 6(d), the word "refused" was replaced with the word "declined," with the section thereafter providing in relevant part: "The parents declined to allow the child to return to their home, and were unable to provide an alternative placement for the child." (App. Vol. II, pg. 15.)

[5] The CHINS order of September 30, 2015 recited that Parents had admitted that R.S. was a CHINS as defined by Indiana Code Section 31-34-1-1,[1] and had admitted material facts including: DCS received a report regarding R.S. on June 23, 2015; DCS learned that Parents were no longer willing to care for their child; R.S. had been informally placed in a foster home; and Parents declined to allow R.S. to return to their home after the foster mother indicated she was not able to continue caring for R.S. Concluding that "an admission of the allegations of the petition [had] been entered," the court adjudicated R.S. a CHINS. (App. Vol. II, pg. 16.) Parents did not appeal the CHINS adjudication.

[6] In October of 2015, DCS issued to Mother, who is employed by a child care agency, a "Notice of Intent to Substantiate Allegations of Child Abuse or Neglect by a Child Care Worker or Licensed Resource Parent." (App. Vol. III, pg. 25.) The Notice advised that, "once the assessment is approved," Mother would be identified as a perpetrator of neglect on the Child Protection Index.

---

[1] Three basic elements are required: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and that those needs are unlikely to be met without State coercion. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

(App. Vol. III, pg. 25.)  Mother was advised that she had the right to participate in an administrative review of the decision with a DCS administrator not involved in making the recommendation to substantiate.  Mother participated in administrative proceedings and requested an administrative appeal hearing.

[7]    On December 15, 2015, DCS filed its Notice of Case Disposition and Motion to Dismiss; Mother filed a response.  The parties disputed whether there had been a specific finding of neglect in the Order of Adjudication, upon which the substantiation of neglect could be predicated.  On March 24, 2016, the Administrative Law Judge ("ALJ") granted summary judgment to DCS.  Mother filed a petition for judicial review of that decision, but did not perfect the appeal due to failure to timely file the record of administrative proceedings.

[8]    On June 16, 2016, Parents filed a Motion for Relief from Judgment pursuant to Trial Rule 60(B)(8).  They asserted that the ALJ interpretation of the Order of Adjudication to include a determination of neglect had caused hardship, prejudice, and injustice and requested that the court "clarify its order of September 30, 2015, to correct the erroneous interpretation by [DCS]" and prevent Mother's inclusion on a state registry so that her employment was not negatively impacted.  (App. Vol. II, pgs. 37-38.)  The trial court conducted a hearing on August 23, 2016 and, on August 30, 2016, denied the motion for relief.  This appeal ensued.

# Discussion and Decision

[9] Trial Rule 60(B)(8) provides in relevant part:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons: …
>
> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4). . . . A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense.

"The trial court's residual powers under subsection (8) may only be invoked upon a showing of exceptional circumstances justifying extraordinary relief." *Baker & Daniels, LLP v. Coachmen Indus.*, 924 N.E.2d 130, 140 (Ind. Ct. App. 2010), *trans. denied*. The circumstances must be other than those enumerated in the preceding subsections, such as mistake, surprise, or excusable neglect. *Id.* In addition to showing sufficient grounds for relief under Trial Rule 60(B), the movant must also make a prima facie showing of a meritorious claim. *Id.* at 141. The decision of whether to grant or deny the motion is left to the equitable discretion of the trial court, and is reviewable only for an abuse of discretion. *Gipson v. Gipson*, 644 N.E.2d 876, 877 (Ind. 1994).

[10] Parents' motion for relief from judgment asserted that they had suffered "tremendous hardship, prejudice and injustice" stemming from the administrative substantiation of neglect even though their CHINS admissions did not employ the words "neglect" or "refuse." (App. Vol. II, pg. 32.) At the

hearing on the motion for relief, Parents did not present testimony or other evidence; rather, argument of counsel was heard. Parents' counsel requested that the trial court "correct obvious error" in the CHINS Order of Adjudication to reflect that the adjudication was based not upon neglect but rather upon R.S. presenting a danger to herself or others, consistent with Indiana Code Section 31-34-1-6. (Tr. at 28.) Counsel urged clarification of an order that had been "completely misinterpreted and then misused." (Tr. at 28.) The trial court's order of August 30, 2016 denying Trial Rule 60(B)(8) relief included the language: "This Court's Order on Adjudication September 30, 2015 found that RS was a CHINS pursuant to IC 31-34-1-1 as a result of admissions made by the parents." (App. Vol. II, pg. 14.)

[11] On appeal, Parents argue that they did not intend to admit to conduct amounting to statutory neglect and that the evidence more appropriately suggests the child's conduct rather than parental conduct precipitated removal. Parents contend that DCS should have considered removal on the basis of Indiana Code Section 31-34-1-6, providing that a child is a child in need of services if "before the child becomes eighteen (18) years of age: (1) the child substantially endangers the child's own health or the health of another individual; and (2) the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be provided or accepted without the coercive intervention of the court." They do not provide a citation to authority by which the CHINS court could order DCS to draft its petition on one statutory basis as opposed to another.

In short, Parents do not deny that they advised DCS that they were no longer providing a home for R.S. and lacked alternative living arrangements for her, or that they asked DCS to take custody of R.S. Parents have not challenged the outcome of the CHINS Order of Adjudication – R.S. spent the remainder of her minority years outside the parental home, the State fulfilled the role of provider, and the CHINS court issued a child support order to Parents for a zero-dollar amount. Parents seek, under a trial rule intended to operate in extraordinary circumstances where the party also asserts a meritorious defense, not to have the Order of Adjudication set aside, but to have the language amended such that a different result would likely ensue in administrative proceedings. A collateral attack on an underlying judgment – not appealed – and a collateral attack on related administrative proceedings – not properly appealed – is not addressable by a Trial Rule 60(B)(8) motion. *See Gipson* (recognizing that appellate courts will not permit the bringing of a Trial Rule 60(B)(8) motion as a substitute for a direct appeal).

# Conclusion

Parents have not demonstrated that the trial court abused its discretion in denying the Trial Rule 60(B)(8) motion for relief from judgment.

Affirmed.

Vaidik, C.J., and Robb, J., concur.